111 F.Supp.2d 867 (2000)
SANDWICH CHEF OF TEXAS, INC. D/B/A Wall Street Deli, for Themselves and for Others Plaintiffs,
v.
RELIANCE NATIONAL INDEMNITY INSURANCE COMPANY F/K/A Planet Insurance Company Reliance Lloyds, Reliance National Insurance Company and United Pacific Insurance Company, et al., Defendants.
No. CIV.A.H-98-1484.
United States District Court, S.D. Texas, Houston Division.
August 28, 2000.
*868 Scott Monroe Clearman, Michael D. Myers, McClanahan & Clearman, Houston, TX, Charles M Silver, Austin, TX, Susan Klein, Austin, TX, for Sandwich Chef of Texas Inc, dba Wall Street Deli, plaintiffs.
*869 Van Harold Beckwith, Robert W Jordan, William Paul Johnson, Baker & Botts, Dallas, TX, for Reliance Nat. Indemnity Ins. Co., Reliance Insurance Company, Reliance Lloyds, Reliance National Insurance Company, United Pacific Insurance Company, defendants.
William R Pakalka, Richard N Carrell, Fulbright & Jaworski, Houston, TX, for Home Ins. Co., defendant.
D Gibson Walton, Vinson & Elkins, Houston, TX, Robert C Walters, Vinson & Elkins, Dallas, TX, for Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation.
Michael H Barr, Sonnenschein Nath & Rosenthal, New York, NY, Roger D Higgins, Thompson Coe et al, Dallas, TX, Margo Weinstein, Sonnenschein Nath et al, Chicago, IL, for American and Foreign Ins. Co., Globe Indem. Co., Royal Indem. Co., Royal Ins. Co. of America, Safeguard Ins. Co., defendants.
David J Schubert, Arter & Hadden, Dallas, TX, for Bituminous Casualty Corporation, Bituminous Fire and Marine Insurance Company, Great West Casualty Insurance Company, International Business & Mercantile Reassurance Company, Old Republic Insurance Company, defendants.
J Hampton Skelton, Skelton Woody & Arnold, Austin, TX, for North River Insurance Company, International Insurance Company, Westchester Fire Insurance Company, United States Fire Insurance Company, United States Fidelity and Guaranty Company, Fidelity & Guaranty Insurance Underwriters Inc., defendants.
Brian Carl Newby, Forrest C. Roqan, Cantey Hanger et al, Austin, TX, Craig P Kalil, Aballi Milne et al, Miami, FL, for Industrial Endem. Co., defendant.
David T Moran, Jackson & Walker, Dallas, TX, for Chubb Indemnity Insurance Company, Chubb Lloyds Insurance Company of Texas, Federal Insurance Co, Great Northern Insurance Company, Northwestern Pacific Indemnity Company, Pacific Indemnity Co, Sun Insurance Office of America Inc, Texas Pacific Indemnity Company, Vigilant Insurance Company, defendants.
Patricia J Villareal, Jones Day et al, Dallas, TX, for Highlands Ins. Co., Highlands Underwriters Ins. Co., Highlands Cas. Co., Aberdeen Ins. Co., defendants.
Lyman Gary Hughes, Carrington Coleman et al, Dallas, TX, for Bankers Standard Insurance Company, Century Indemnity Company, Indemnity Insurance Company of North America, Insurance Company of North America, Pacific Employers Insurance Company, defendants.
Rowe W Snider, Lord Bissell & Brook, Chicago, IL, Ernest Ryan Higginbotham, Strasburger and Price, Dallas, TX, J Wiley George, Strasburger & Price, Houston, TX, Randall A Hack, Joseph E Coughlin, Lord Bissell & Brook, Chicago, IL, for Atlantic Insurance Company, the Automobile Insurance Company of Hartford Connecticut, the Charter Oak Fire Insurance Company, Farmington Casualty Company, Gulf Group Lloyds, Gulf Insurance Company, the Nippon Fire/Marine Insurance Company Ltd., U S Branch, the Phoenix Insurance Company, Select Insurance Company, the Standard Fire Insurance Company, Travelers Casualty and Surety Company fka Aetna Casualty & Surety Company, Travelers Casualty and Surety Company of America fka Aetna Casualty & Surety Company of America, Travelers Casualty and Surety Company of Illinois fka Aetna Casualty & Surety Company of Illinois, the Travelers Indemnity Company, the Travelers Indemnity Company of America, the Travelers Indemnity Company of Connecticut fka the Travelers Indemnity Company of Rhode Island, the Travelers Indemnity Company of Illinois, the Travelers Insurance Company, Argonaut Insurance Company, defendants.
Michael Lowenberg, Akin Gump Strauss Hauer and Feld, Dallas, TX, for Argonaut *870 Ins. Co., Argonaut-Midwest Ins. Co., Argonaut Southwest Ins. Co., defendants.
Curtis L Frisbie, Jr, Gardere & Wynne, Dallas, TX, for American Home Assurance Company, Birmingham Fire Insurance Company of Pennsylvania, Commerce & Industry Insurance Company, Granite State Insurance Company, Illinois National Insurance Co., the Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Co., defendants.
David L Orr, Kuperman Orr et al, Austin, TX, Michael L McCluggage, Wildman Harrold et al, Chicago, IL, for American Manufacturers Mut. Ins. Co., American Motorists Insurance Company, American Protection Insurance Company, Lumbermens Mutual Casualty Company, defendants.
Joel W Mohrman, McGlinchey Stafford, Houston, TX, James R Safley, Robert J Gilbertson, Robins Kaplan et al, Minneapolis, MN, Thomas B Keegan, Robins Kaplan et al, Chicago, IL, for Emcasco Insurance Company, Employers Mutual Casualty Company, Farmland Mutual Insurance Company, Nationwide Agribusiness Insurance Company, Nationwide Indemnity Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Mutual Insurance Company, Nationwide Property and Casualty Insurance Company, Scottsdale Indemnity Company, Middlesex Insurance Company, Sentry Insurance a Mutual Company, Employers Insurance of Wausau, a Mutual Company, Wausau Business Insurance Company, Wausau Underwriters Insurance Company, defendants.
John E Chapoton, Jr, Cunningham Darlow et al, Houston, TX, Michael L. McLuggage, Wildman Harrold et al., Chicago, IL, for Agricultural Ins Co, American Alliance Insurance Company, American National Fire Insurance Company, Great American Insurance Company, Mid-Continent Casualty Company, defendants.
John E Chapoton, Jr, Cunningham Darlow et al, Houston, TX, Eric J R Nichols, Beck Redden & Secrest, Houston, TX, Michael L. McCluggage, Brent R Austin, Wildman Harrold et al, Chicago, IL, for American Casualty Company of Reading, PA., Continental Casualty Company, National Fire Insurance Company of Hartford, Transcontinental Insurance Company, Transportation Insurance Company, Valley Forge Insurance Company, Boston Old Colony Insurance Company, Casualty Insurance Company of Texas, Commercial Insurance Company of Newark, New Jersey, the Continental Insurance Company, the Fidelity and Casualty Insurance Company New York, Firemen's Insurance Company of Newark, New Jersey, the Glens Falls Insurance Company, Kansas City Fire & Marine Insurance Company, Niagara Fire Insurance Company, defendants.
James L Sowder, Thompson Coe Cousins & Irons, Dallas, TX, Roger D. Higgins, Thompson Coe et al., Dallas, TX,
Heather E Rennie, Eckert Seamans et al, David E Tungate, Eckert Seamans et al, Pittsburgh, PA, for American Guarantee and Liability Insurance Company, American Zurich Insurance Company, Zurich Insurance Company, Republic-Franklin Insurance Company, Utica Mutual Insurance Company, Utica National Insurance Company of Texas, Fairmont Insurance Company, Tig Insurance Company of Texas fka Transamerica Insurance Company of Texas, Tig Premier Insurance Company fka Transamerica Premier Insurance Company, Assurance Company of America, Maryland Casualty Company, Maryland Insurance Company fka American General Fire and Casualty Company, Northern Insurance Company of New York, Valiant Insurance Company, defendants.
James L Sowder, Thompson Coe Cousins & Irons, Dallas, TX, Roger D. Higgins, Thompson Coe et al., Dallas, TX, Robert L Fleischman, Murphy Sheneman et al, San Francisco, CA, Rolf S Woolner, Murphy *871 Sheneman et al, Los Angeles, CA, Mark A Olson, Robert A Julian, Murphy Sheneman et al, San Francisco, CA, for American Auto. Ins., Co., American Ins. Co., Associated Indem. Corp., Fireman's fund Ins. Co. Fireman's Fund Ins., Co. of Texas, Fireman's Fund Ins. Co. of Wisconsin, National Surety Corp., defendants.
Craig A Raabe, Robert A. Izard, Jr., Robinson & Cole, Hartford, CT, John M Skrhak, Looper Reed et al, Dallas, TX, for Connecticut Indem. Co., defendant.

ORDER
HITTNER, District Judge.
Pending before the Court is the Supplemental Motion for Summary Judgment (Document # 282) filed by Defendants. Having considered the motion, submissions, and application of law, together with the arguments of counsel at a hearing conducted by the Court on August 15, 2000, the Court determines that the motion for summary judgment should be denied.
Plaintiff Sandwich Chef of Texas, Inc. d/b/a Wall Street Deli ("Wall Street") filed a class action complaint against numerous defendants. Plaintiff alleges it and the proposed class have been defrauded by the concerted acts of the defendants and have been required to pay excessive workers' compensation premiums during the last decade. Wall Street and members of the putative class are employers that purchased retrospectively rated workers' compensation insurance. Retrospectively rated workers' compensation insurance combines expense factors and loss experience together in varied ways, such that the amount of the premium at the end of the policy period is affected by the amount of the insured's covered losses. When the loss experience is less than anticipated, refunds or credits are issued; when the loss experience is greater than anticipated, additional premiums are required.
Most employers purchase workers' compensation coverage in the voluntary market. Employers that are unable to secure coverage in the voluntary market may obtain it through legislatively established involuntary markets, which are sometimes called "residual markets," "assigned risk markets," or "assigned risk pools." In order to obtain authorization to write worker's compensation insurance in some states, insurers must agree to reinsure the "residual markets" of those states. As reinsurers of residual markets in some jurisdictions, insurance companies are often required to pay assessments necessary to fund deficits that result when workers' compensation losses incurred by employers insured through such residual markets exceed premiums paid by those employers.
Beginning in the late 1980s, residual-market assessments began to increase dramatically. Insurance companies responded to the increases in residual market assessments by factoring the expenses associated with paying these assessments in the pricing of voluntary-market insurance programs. Insurance program documents disclosed the factoring of these expenses in pricing by explicitly identifying these "residual market charges" (also known as "residual market loads" or "RMLs").
Wall Street alleges that from May 5, 1988 through January 4, 1990, approximately 150 insurance carriers charged excessive premiums for workers' compensation insurance sold to a putative class consisting of thousands of employers in 44 states and in the District of Columbia. Wall Street contends that the defendant insurers employed the National Council on Compensation Insurance, Inc. ("NCCI"), an insurance trade organization, which includes as members persons employed by the defendant insurers, as a racketeering enterprise to defraud a putative class of insureds through a common scheme of mail and wire fraud, in violation of 18 U.S.C. §§ 1962(c)-(d).
Defendants have filed a motion for summary judgment on several grounds. First, defendants argue that Wall Street's "invoice *872 theory" fails to allege indictable acts of racketeering. According to defendants, to establish mail or wire fraud after Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), Wall Street must prove a material misrepresentation that would support a claim for commonlaw fraud. At most, the defendants contend, Wall Street's "invoice theory" alleges that one defendant insurer, Reliance, sent invoices to Wall Street that constitute misrepresentations of law in the performance of contractual duties, which are not actionable in fraud.
Second, defendants argue that summary judgment is proper because Wall Street fails to allege a viable basis for finding that it suffered its alleged injuries "by reason of" the alleged misrepresentations in Reliance's invoices. To prove an injury "by reason of" mail and wire fraud within the meaning of 18 U.S.C. § 1964(c), a RICO plaintiff must plead and prove that it relied on the misrepresentations constituting the predicate acts of mail and wire fraud. According to the defendants, state and federal law conclusively presumes that policy holders know the contents and effects of applicable filed rates, and this "presumption of knowledge" precludes a finding that Wall Street relied on Reliance's alleged misrepresentations concerning the conformity of Wall Street's negotiated rates with allegedly applicable filed rates.
Third, according to the defendants, the summary judgment evidence establishes that Reliance never lied to Wall Street about the legality of Wall Street's premiums or the conformity of those premiums to state filed rates. Rather, contend the defendants, Wall Street always knew that Reliance would adjust (and did adjust) Wall Street's premiums using the unfiled and unapproved "tax multipliers" and "residual market loads" that Wall Street is challenging.
Fourth, according to the defendants, Wall Street cannot prove that Reliance or any other entity made any misrepresentations to any state regulators regarding any of the insurance programs upon which Wall Street is basing this case. Also, defendants argue that Wall Street cannot prove that it relied upon any misrepresentation made to any regulator regarding any policies issued to policy holders.
Fifth, the defendants assert that the McCarran-Ferguson Act entitles them to summary judgment on Wall Street's claims. Specifically, the defendants argue that awarding Wall Street treble damages under the RICO statute for allegedly fraudulent departures from the filed rates would frustrate non-discrimination policies declared in state insurance laws requiring insurers to collect the full amount of any applicable filed rate and preclude any remedy that would effectively grant any policy holder a refund of any portion of a filed rate.
Sixth, the defendants argue that they are entitled to summary judgment on Wall Street's conspiracy claim under section 1962(d). A claim under section 1962(d) based on an alleged conspiracy to violate section 1962(c) through a pattern of racketeering necessarily fails as a matter of law where the plaintiff cannot prove that the defendants committed predicate acts of racketeering or that the plaintiff suffered an injury to its business or property "by reason of" those acts.
Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the burden of demonstrating to the Court that there is an absence of a genuine issue of any material fact. Id. at 323, 106 S.Ct. 2548. The burden then shifts to the party who bears the burden of proof on the claims on which summary judgment is sought to present evidence beyond the pleadings to show there is a genuine issue for trial. Id. A genuine *873 issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).
To recover under 18 U.S.C. § 1964(c) for injuries suffered by reason of a violation of § 1964(c) through a pattern of racketeering, a plaintiff must plead and prove, in part, that: (1) the defendant committed two or more predicate acts of racketeering, and (2) the plaintiff suffered an injury to its business or property "by reason of" those predicate acts.
The defendants argue that Wall Street cannot prove that the defendants violated the mail and wire fraud statute. The defendants cite the Supreme Court opinion in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) for the proposition that Congress intended to incorporate the requirements of common law fraud into the federal mail and wire fraud statutes. Thus, the defendants argue that proving mail fraud requires proof of a material misrepresentation that would support a claim for common-law fraud.
The defendants first argue that misrepresentations made in invoices, like other misrepresentations made in the performance of a contract, are not actionable in fraud. See Perlman v. Zell, 185 F.3d 850 (7th Cir.1999). In response, Wall Street cites to numerous cases for the proposition "that to knowingly distribute inflated billings is common law fraud." See Wall Street's Response to Defendants' Supplemental Motion for Summary Judgment at 43.
The Court determines that overbilling during the performance of a contract may be the basis for a civil RICO mail fraud case. In Neder, a case cited by the defendants, Neder was prosecuted under the criminal RICO statute for mail fraud within loan and construction contracts. Further, while the defendants are correct that Perlman stated, "[it is] difficult to recast a dispute about broken promises into a claim of racketeering under RICO," the Perlman court also noted that "[d]ifficult is not impossible. Sometimes the evidence shows outright lies and a plan not to keep one's promises." Perlman, 185 F.3d at 853. Accordingly, the facts as alleged by Wall Street  that Reliance engaged in a scheme to intentionally overbill its insured for workers' compensation insurance  may support a claim under RICO.
The defendants further argue that misrepresentations of law are not actionable in fraud. Specifically, defendants contend that the misrepresentations made in the Reliance invoices  that the amounts they demanded did not exceed applicable filed rates  would not be actionable in fraud because the invoices would be falsely representing that the amounts demanded were lawful. Thus, any misrepresentation by Reliance that an amount charged was lawful was, at most, a misstatement of law regarding the legal consequence of the relevant regulations and filings that is not cognizable as a fraud.
The Court disagrees with this argument. Wall Street has provided summary judgment evidence that establishes that Reliance knew that the invoices included overcharges that exceeded the filed rate. These alleged misrepresentations are construed by this Court as alleged misstatements of fact, which are actionable in fraud.
Reliance next argues that Wall Street cannot establish that it suffered an injury "by reason of" the alleged misrepresentations in Reliance's invoices. In the supplemental motion for summary judgment, defendants extensively discuss the issue of whether Wall Street reasonably could have relied upon any alleged misrepresentations in the invoices. Pursuant to RICO, a plaintiff must establish that it suffered an injury "by reason of" the predicate acts of mail or wire fraud.
*874 Defendants first argue that Wall Street must plead and prove that it reasonably or justifiably relied upon any alleged misrepresentation in the invoices. According to the defendants, any reliance by Wall Street that the invoices were consistent with the filed rates would not be reasonable because consumers are "conclusively presumed" to know the content and effects of applicable filed rates. See, e.g., Marcus v. AT&T Corp., 138 F.3d 46, 63 (2d Cir. 1998) ("As a matter of law, it would not be reasonable for a consumer to harbor a belief about AT & T's billing practices that is inconsistent with the tariff AT & T has filed with the FCC.") Moreover, the defendants argue that Wall Street agreed, by contract, to pay a rate higher than the filed rate.
The filed rate doctrine is based on the principle that a regulated entity may not engage in pricing discrimination between ratepayers, i.e., all rate payers must be charged the same rate for services (non-discrimination strand). Furthermore, the state regulatory agency shall be the exclusive source of establishing rates for a particular entity (nonjusticiability strand). Marcus, 138 F.3d at 48-49. Thus, argues Wall Street, a purchaser of a commodity regulated by a filed rate cannot be forced to pay a rate higher than the filed rate, even if it agreed to do so by contract. See Arkansas Louisiana Gas Co., 453 U.S. 571, 582, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981); Stein v. Sprint Corp., 22 F.Supp.2d 1210, 1212 (D.Kan.1998) ("Regardless of the carrier's motive  whether it seeks to benefit or harm a particular customer  the policy of nondiscriminatory rates is violated when similarly situated customers pay different rates for the same services.") Wall Street contends that if it were forced to pay an amount more than the filed rate, it would be subject to the discriminatory pricing practices that the filed rate doctrine is intended to preclude.
All of the cases the defendants have cited to support their contention that Wall Street is barred from proving that it reasonably relied upon any misrepresentations made by an invoice, that purportedly represented that the amount it charged did not exceed an applicable filed rate, are cases in which the consumers were attempting to obtain an assessment lower than the applicable filed rate. The principle espoused in these cases is different from the instant case where Wall Street is attempting to enforce the filed rate.
Despite the defendants' analysis to the contrary, this Court finds persuasive the courts' reasoning in Drew v. MCI Worldcom Management Co.,Inc., 1999 WL 1087470 (N.D.Tex. December 1, 1999) and Black Radio Network, Inc. v. NYNEX Corp., 44 F.Supp.2d 565, 574 (S.D.N.Y. 1999). In Drew, the claimant filed a class action complaint pursuant to RICO to recover damages from MCI for charging long distance customers a fee that exceeded the approved amount in the tariff. MCI moved to dismiss the plaintiff's claim under the filed rate doctrine. The court denied MCI's motion stating that "the purposes of the filed tariff doctrine have no apparent relevance to Drew's claims to enforce the part of the MCI tariff that pertains to the FUSF."
In reaching this conclusion, the Drew court relied upon the reasoning in Black Radio, where the court found that the filed rate doctrine had no application to a defense to RICO claims where the plaintiffs sought to enforce the filed rates.
The filed rate doctrine is inapplicable because plaintiffs do not challenge, either directly or indirectly, the reasonableness of the rate contained in any filed tariff. Nor do plaintiffs seek to benefit from a rate different from that provided by the tariff. Rather, plaintiffs contend that defendants failed to comply with the terms of the tariff and they seek, in essence, to enforce the filed tariff. Hence, plaintiffs' claims do not implicate either the nondiscrimination or nonjusticiability strands of the filed rate doctrine .... Nor will plaintiffs' claims *875 undermine the PSC's regulatory authority.
Black Radio, 44 F.Supp.2d at 574 (citations omitted). Thus, as clearly stated in Black Radio, "presumed knowledge" of filed rates, that defendants have argued precludes Wall Streets' ability to establish "reliance" on any misrepresentations in the invoices, is inapplicable in this case.
The defendants next argue that even assuming the invoices constitute indictable acts of mail or wire fraud and even assuming that the presumption of knowledge did not preclude a finding that Wall Street's payment of those invoices constitutes an injury "by reason of" such acts, the facts nevertheless would preclude recovery under section 1964(c) based on Wall Street's invoice-payment theory. Specifically, defendants argue that the summary judgment evidence establishes: (a) Reliance's invoices to Wall Street made no representations concerning the legality or illegality of the amounts they demanded, and (b) Wall Street knowingly agreed to have its insurance premiums calculated using the unfiled tax multipliers it challenges through this action.
The Court disagrees with the assumption asserted by the defendants: that the invoices would have to have stated that they included only legal charges in order for the invoices to constitute a misrepresentation. Any statement short of such an assertion, contend the defendants, bars Wall Street's RICO claim. The summary judgment evidence presented sufficiently creates a fact issue with respect to whether the invoices by themselves constitute "misrepresentations."
Similarly, the summary judgment evidence presented creates a genuine issue of material fact concerning whether Wall Street relied on the invoices to its detriment. The defendants' position is that Wall Street agreed from the beginning of its relationship with Reliance that Reliance would include unfiled and unapproved residual market loads in the unfiled and unapproved tax multipliers that Reliance would use to calculate the retrospective adjustments of the premiums for Wall Street's insurance programs and that, as a result, the invoices Wall Street would receive from Reliance would include unapproved and unfiled charges for residual market loads. However, the summary judgment evidence indicates that Wall Street assumed that the charges it had agreed to were legal and consistent with the filed rate. The Court is unwilling to find at this time that Wall Street's assumption that what it was agreeing to be charged was a legal rate, consistent with the filed rateis an unreasonable assumption. The Court is further unwilling to find at this time, as the defendants suggest, that Wall Street's assumption that it was being charged a legal rate cannot be the basis of a misrepresentation. Likewise, the Court finds the defendants' argument that Wall Street was on notice that it was subject to illegal or unlawful charges after it participated in the Weatherford action to be unconvincing. Again, it would not be unreasonable for Wall Street to assume that Reliance's invoices contained only legal RMLs after the filing of both the Weatherford action and this action. Thus, there is sufficient summary judgment evidence to create a fact question regarding the reliance issue.
Defendants argue that Wall Street's "fraud-on-the-regulator" theory is barred pursuant to the Fifth Circuit's recent opinion in Summit Properties, Inc. v. Hoechst Celanese Corp., 214 F.3d 556 (5th Cir. 2000). In Summit, the Fifth Circuit analyzed whether plaintiffs, a class of property owners whose homes were built with polybutylene ("PB") plumbing systems, could assert a RICO claim against the manufacturers of the PB. The Fifth Circuit found that the plaintiffs could not seek RICO damages against the PB manufacturers because any fraud during the sale of the PB products "proximately injured only those purchasers who relied on the alleged misrepresentations, since the fraud facilitated *876 a sale that might not otherwise have been made." Summit, 214 F.3d at 560. Because the plaintiffs in Summit came into possession of the PB products without relying on the alleged fraud, any past fraud was not a proximate cause of the plaintiffs' resulting injuries. Id.
The defendants argue that Wall Street's claim, that it relied to its detriment on misrepresentations sent to state regulators, cannot survive after Summit. Wall Street responds that Summit does not foreclose their fraud-on-the-regulator claim. The Summit court noted that fraud addresses "liability between persons with direct relationships  assured by the requirement that the plaintiff has either been the target of a fraud or has relied upon the fraudulent conduct of the defendants." Id. at 561.
The Fifth Circuit however, did reference the concept of the "target wing" in applying RICO in certain cases in which direct reliance may not exist. Id. at 561 (citing Mid Atlantic Telecom. Inc. v. Long Distance Servs., Inc., 18 F.3d 260, 263-64 (4th Cir.1994)). Mid Atlantic discusses the "by reason of" language of RICO, without ultimately reaching the issue of "reliance." In Mid Atlantic, the plaintiffs filed a RICO complaint based on the fact that the defendant had allegedly engaged in a fraudulent scheme to lure the plaintiffs' customers away. The defendants had argued that because the plaintiffs were not the direct targets of the alleged fraud they could not establish that they were injured "by reason of" the defendants' actions.
In rejecting this argument, the court found that "Mid Atlantic's injuries, as alleged, are not derivative of any losses suffered by its former customers. Rather, it claims distinct and independent injuries; lost customers and lost revenues due to the necessity of offering lower rates to match LDS's fraudulent ones." Id. at 264.
Likewise, Wall Street's fraud-on-the-regulator is cognizable as a RICO claim after Summit because Wall Street has established through the summary judgment evidence that the defendants engaged in a scheme to collect phantom premiums through misrepresentations made to insurance regulators. The summary judgment evidence establishes direct injury to Wall Street from the defendants' alleged misrepresentations made to it and to state regulators. These allegations are sufficient to establish predicate racketeering acts of mail and wire fraud when the defendants, or the NCCI, at their direction, submitted false rates filings and applications. The allegations of fraud, through the scheme to collect excessive workers' compensation premiums, is sufficient to satisfy RICO after Summit. See Summit, 214 F.3d at 561 ("Accepting as claimed that the defendants' strategy may have been to gain market share by fraud in the initial sale of PB components, it is not contended that these particular plaintiffs were the targets of scheme to defraud accomplished by defrauding others.") (emphasis added).
Defendants' final argument is that awarding Wall Street treble damages under RICO would violate the McCarran-Ferguson Act by frustrating non-discrimination policies declared in state insurance statutes requiring insurers to collect the full amount of any applicable filed rate and precluding any remedy that would effectively grant any policyholder a refund of any portion of the applicable filed rate. The McCarran-Ferguson Act precludes application of a federal statute in face of state law "enacted ... for the purpose of regulating the business of insurance." 15 U.S.C. §§ 1011-1012 (1997).
Wall Street argues that the recent Supreme Court opinion in Humana v. Forsyth, 525 U.S. 299, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999), clearly contradicts the defendants' argument that the McCarran-Ferguson Act precludes application of RICO in this case. The plaintiffs in Humana were beneficiaries of group health insurance policies issued by Humana Insurance. Between 1985 and 1988, plaintiffs *877 received medical care from a certain hospital. Humana agreed to pay 80% of the policy beneficiaries' hospital charges over a designated deductible. The beneficiaries paid the remaining 20% of the charges. However, pursuant to a concealed agreement, the hospital gave Humana large discounts on its portion of the hospital charges for care provided to the policy beneficiaries. As a result, Humana paid significantly less than the 80% of the hospital's actual charges for the care that the policy beneficiaries received and the beneficiaries paid significantly more than 20% of those charges.
Plaintiffs sued under RICO. Humana moved for summary judgment citing section 2(b) of the McCarran-Ferguson Act which provides, "no Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b) (1997).
The district court granted the motion for summary judgment finding that RICO's treble damage provision exceed the state's permissible penalties for insurance fraud such that applying RICO would be "tantamount to allowing Congress to intercede in an area expressly left to the states under the McCarran-Ferguson Act." Humana, 525 U.S. at 304-05, 119 S.Ct. 710 (citing Forsyth v. Humana, 827 F.Supp. 1498, 1521-1522 (D.Nev.1993)). The Ninth Circuit reversed in part, determining that the McCarran-Ferguson Act does not preclude "application of a federal statute prohibiting acts which are also prohibited under a state's insurance laws." Forsyth v. Humana, Inc., 114 F.3d 1467, 1482 (9th Cir.1997).
The Supreme Court granted certiorari on the following question: "Does a federal law, which proscribes the same conduct as state law, but provides materially different remedies, "impair" state law under the McCarran-Ferguson Act?" Humana, 525 U.S. at 305, 119 S.Ct. 710. In answering this question in the negative, the Supreme Court held, "when federal law does not directly conflict with the state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." Id. at 309, 119 S.Ct. 710.
Defendants argue that Humana is distinguishable on its facts from the instant case. According to defendants, Humana is not controlling because it was not a filed rate case. In this case, if the RICO claims were to proceed, Wall Street could recoup damages, which would in effect interfere with the states' filed rate for workers' compensation premiums. Thus, the defendants state that Humana establishes that McCarran-Ferguson precludes RICO's application not only when applying RICO would "directly conflict with state regulation" of insurance but also when applying RICO would "frustrate [a] declared state policy or interfere with a State's administrative regime." Id.
The Court disagrees. While Humana is not a filed rate case, the fundamental principle in the case governs the issues before this Court. Application of RICO in this case does not directly conflict with any state regulation, but rather, complements the states' regulations by enforcement. Id. at 308, 119 S.Ct. 710. Accordingly, allowing Wall Street to proceed with its RICO claims does not implicate the McCarran-Ferguson Act.
The defendants' final argument is that summary judgment should be granted on Wall Street's conspiracy claim under section 1962(d). The defendants argue that "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." See Defendants' Supplemental Motion for Summary Judgment at 47 (citing Lightning Lube, Inc. v. Witco Corp., 4 *878 F.3d 1153, 1191 (3d Cir.1993)). However, as discussed supra the Court determines that Wall Street's section 1962(c) claims survive summary judgment. As such, Wall Street's section 1962(d) claims survive as well.
Based on the foregoing, the Court hereby
ORDERS that the Supplemental Motion for Summary Judgment (Document # 282) is DENIED.